*McKean, Chief Justice.
 

 We certainly should not permit Mr. Snowdon, if he were here, to swear that he was told that such persons were present at the tender; but the question is, whether, having certified what he ought not to certify, the whole ought to be rejected ? We think, that it ought not. The paper should be admitted, to prove that j>ayment was made to the treasurer, agreeable to the act of assembly, at the time mentioned in the receipt. All the rest may be stricken out; or, indeed, only so much as goes to that point, may be read, and admitted to be proved.
 

 The Chief Justice, accordingly, read to the jury so much of the certificate as related to the receipt, and suppressed the rest.
 

 The material facts, and the law arising in the principal case, were stated in the following charge to the jury.
 

 McKean, Chief Justice. — The evidence that has been produced estab- . lishes these facts : That the defendant owed the plaintiff a prior debt of
 
 17001,
 
 which was secured by a mortgage, dated the 23d of April 1768, on a mill and other real estate ; that on this mortgage several payments were made, at several times ; but the interest running eventually greatly in arrears, the defendant was advised to sell the mortgaged premises, which he did, and Weiss (one of the witnesses who has been examined) became the purchaser, for 1750Z., which, it was agreed by the parties, should be paid to Johnson, on Hooker’s account. It appears, that Weiss accordingly made several payments to Johnson ; and it has been contended by the defendant’s counsel, that calculating these and the previous payments, the plaintiff’s demand, including the present bond, has been considerably overpaid. There does seem, indeed, to be a mistake in the sums ; but of this the jury must judge
 
 ;
 
 for it is in proof, that on the 24th of April 1777, the defendant became debtor to the plaintiff, and gave the bond in question ; so that if any deceit was used upon the occasion, we think, it is incumbent upon him to show it to the satisfaction of the jury.
 

 ■ The court, then, are clearly of opinion, that this bond must be considered as a new contract ; but even in that light, the defendant insists, that it was discharged by a tender and refusal on the 29th of March 1780. The tender at that time has been proved ; though there is no certainty as to any previous tenders which the defendant has endeavored to establish. And here the great question arises, whether this is to be deemed an absolute discharge, or only to be regarded as a tender at common law? — which necessarily leads to a review of the various acts of assembly upon the subject.
 

 The act passed on the 29th of January 1777 (2 State Laws, 7), declares that a tender shall amount to an actual payment and discharge; which is far more extensive than a tender at common law; that operating only to '
 
 *423
 
 suspend the interest, until a subsequent demand and refusal have taken place. If, therefore, the tender, on this occasion, was made in continental money emitted by congress *beforethe 29th of January 1777, it is cer- r*. „ tainly conclusive against the present demand. Conscientious men *- may, indeed, reflect upon the enormous advantage of making a payment at the rate of sixty for one ; but we are bound by the explicit language of the law (except where it violates the constitution of the state), and must leave those to answer for its policy, by whom it was enacted.
 

 But on the other hand, how will the case stand, if the tender was not made in bills of credit of a date antecedent to the 29th of January 1777 ? The arguments of the counsel have differed widely on this ground ; and the question is, whether the words of the act apply only to the bills of credit which congress had emitted; or extend also to those bills which congress might emit ?
 

 The doubt, in this respect, is not entirely novel. A British sergeant, having a license, in the year 1778, to carry clothing from Philadelphia to Lancaster, for British prisoners of war, brought with him some forged paper money, and passed it at the latter place. He was tried for this offence, and the distinction was then taken, that the forgery was of an emission subsequent to the 29th of January 1777. The point, however, did not prove to be material; for the court considered the defendant as an alien enemy, who might, indeed, be punishable for any action
 
 malum in se,
 
 but was not liable to the penalties of a municipal regulation ; and on that ground, directed the jury to acquit him.
 

 By the act which was passed on the 20th of March 1777 (2 State Laws 48), we find, that the state paper money, then emitted, was only made a tender at common law ; for the words of the act merely declare that a tender in that money shall have the same effect as a tender in specie, which is clearly no more than a suspension of the interest. The succeeding act, passed on the 25th of May 1778 (2 State Laws, 31), after providing for the exchange of bills of credit issued under the authority of the king of Great Britain, gives to the bills of credit issued by congress, only the same currency and effect in payment of debts which the above mentioned act of the 20th of March 1777, had given to the bills of credit emitted by the state ; and that, as I have already remarked, did not amount to an absolute discharge of the obligation. By the act of the 3d of April 1781 (1 Sm. Laws 519), tenders are declared to have no other force than that which was given to them by the laws in existence at the time they were made. (1 State Laws 447.)
 

 The intention of the legislature must be collected from the words which they have used, unless a different meaning can be manifestly shown. The construction, then, that we have put upon the words of the act of the 20th of March 1777 (which by express reference, is made to govern the operation of the act of the 25th of May 1778), is, that the legislature only intended to make a tender of the 200,000i. bills of credit, equivalent to a tender at com mon law. There is no satisfactory reason opposed to this construction; and but for this, the act of the 29th of January 1777, might be as well extended to the bills of credit which were afterwards, *as to those which were previously emitted by congress — a matter that we are not bound, nor *- are we inclined to countenance.
 

 
 *424
 
 This opinion, unanimously formed, upon mutual consultation, and full deliberation, leads to a more particular consideration cf the evidence ; and if the jury think that the bills of credit, or any part of them, which were tendered to the plaintiff, on the 29th of March 1780, were emitted subsequent to the 29th of January 1777, they must only give this tender the effect at common law.
 

 It may be proper here to notice, that there were two bills, of thirty dollars each, in the bundle of paper money tendered ; and the plaintiff’s counsel has said, that there were no bills of that denomination emitted prior to the 29th of January 1777. But he is certainly mistaken ; as I remember well the trial of a man for counterfeiting a thirty dollar bill emitted in 1776 : and therefore, this circumstance is by no means conclusive.
 

 But should the jury, upon the whole of the evidence, find, that this tender was made in bills of credit emitted since the 29th of January 1777, and so not an absolute discharge of the debt, they will next inquire, in what manner the bond ought now to be j>aid ? By the act of the 3d of April 1781, it is declared, that all debts and contracts entered into between the 1st of January 1777, and the 1st of March 1781, shall be liquidated according to the scale of depreciation. The plaintiff, therefore, is not entitled to recover the whole 500i. in specie, but only so much as that sum in paper money was worth, at the time the contract was entered into; which was on the 24th of April 1777 ; nor is he entitled to any interest from the date of the tender, until this action (which is to be considered as a new demand) was instituted.
 

 The jury found a verdict in favor of the plaintiff for 272i. 3s. 4ci. debt, with costs: from which, it seems, that they were of opinion, that the tender was not made entirely in bills of credit emitted before the 29th of January 1777 ; and that they pursued the directions of the court in that alternative,
 

 )
 
 See Respublica v. Coates, 1 Yeates 35; Smith
 
 v.
 
 Davids,
 
 post,
 
 p. 410; Thurston v. Murray, 3 Binn. 413; King of Spain
 
 v.
 
 Oliver, 1 Peters C. C. 217.